Thadd J. Llaurado (#1000773)
Keith R. Stachowiak (#1000050)
**MURPHY & PRACHTHAUSER**
*Attorneys for Plaintiff*
One Plaza East Building
330 E. Kilbourne Avenue, Suite 1200
Milwaukee, WI 53202
Tel.: (414) 271-1011
Email: tllaurado@murphypracthauser.com

Thomas P. Valet
**RHEINGOLD, VALET, RHEINGOLD, MCCARTNEY & GIUFFRA LLP**
*Attorneys for Plaintiff*
113 East 37th Street
New York, NY 10016
Tel.: (212) 684-1880
E-mail: tvalet@rheingoldlaw.com

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| LORIE JEAN HINKEL, (formerly known as LORIE JEAN BELL),<br><br>          Plaintiff,<br><br>-against-<br><br>UNITED STATES OF AMERICA and ALASTAIR HOYT,<br><br>          Defendants. | Case No.<br><br><br><br>COMPLAINT FOR DAMAGES |

Plaintiff LORIE JEAN HINKEL, formerly known as LORIE JEAN BELL, by and through her attorneys Murphy & Prachthauser and Rheingold, Valet, Rheingold, McCartney & Giuffra LLP, respectfully alleges, upon information and belief, the following:

**JURISDICTION AND VENUE**

1. Jurisdiction for this action in the United States District Court arises under 28 U.S.C § 1346(b) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a), which provides that a tort claim which is administratively denied or not given administrative disposition within 6 months of the filing of the claim may be presented to a Federal District Court for judicial consideration. Venue is based upon 28 U.S.C. 1402(b) in that the acts or omissions complained of occurred within this judicial district.

2. Jurisdiction over Defendant Alastair Hoyt for this action in the United States District Court arises under the Supplemental Jurisdiction provisions of 28 U.S.C. 1367 in that the claims against Defendant Hoyt are so related to the claims in this action against the Defendant United States over which this Court has original jurisdiction that they form part of the same case or controversy

**FIRST CAUSE OF ACTION**
**FOR MEDICAL MALPRACTICE**

3. Prior to the commencement of this action, and within 2 years of its accrual, Plaintiff Lorie Jean Hinkel, (formerly known as Lorie Jean Bell) presented an Administrative Tort Claim for Damage, Injury or Death (Standard Form 95) to defendant UNITED STATES OF AMERICA, Department of Veterans Affairs, Office of the Regional Counsel, 810 Vermont Ave., NW, Washington, DC 20420. That claim was subsequently timely amended. Annexed hereto as **Exhibit A** is a copy of said Amended Administrative Tort Claim forms The claim was acknowledged and was assigned Claim No. GCL 77111.

4. Plaintiff's claim was administratively denied by the Veterans Affairs on or about April 5, 2016. This action has been timely commenced within 6 months of the date of final denial of Plaintiff's claim by the Veterans Affairs.

5. Plaintiff Lorie Jean Hinkel is a citizen and resident of the State of Wisconsin, County of Winnebago, within this Judicial District.

6. Upon information and belief, Defendant UNITED STATES OF AMERICA, at all times mentioned herein, owned, operated, maintained, managed, staffed and controlled the medical facility known as the Milwaukee Veterans Affairs Medical Center ("Milwaukee VAMC"), 5000 W National Ave, Milwaukee, WI 53295, within this judicial district.

7. Upon information and belief, the physicians, surgeons, nurses, attendants, anesthesiologists, nurse anesthetists, assistants, consultants, staff members, and other medical care providers at the Milwaukee VAMC were the ostensible agents, actual agents, and employees of Defendant UNITED STATES OF AMERICA, and in doing the things hereinafter mentioned, were acting within the scope of their authority as such agents and employees with the consent of Defendant UNITED STATES OF AMERICA.

8. Upon information and belief the Defendant Alastair Hoyt at all relevant times herein was an employee of the Milwaukee VAMC while working at the Milwaukee VAMC.

9. Upon information and belief the Defendant Alastair Hoyt at all relevant times herein was an employee of the Defendant United States of America while working at the Milwaukee VAMC.

10. Upon information and belief the Defendant Alastair Hoyt at all relevant times herein was an agent of the Milwaukee VAMC while working at the Milwaukee VAMC.

11. Upon information and belief the Defendant Alastair Hoyt at all relevant times herein was an agent of the Defendant United States of America while working at the Milwaukee VAMC.

12. Upon information and belief Defendant Alastair Hoyt at all relevant times was an independent contractor of the Defendant United States while working at the Milwaukee VAMC.

13. That Plaintiff Lorie Jean Hinkel has been a patient of and has been treated by the Veteran's Administration for many years up to the present time, and as an honorably discharged veteran of the United States military, she was entitled to receive and had sought, consulted and engaged the services of the above-described physicians, surgeons, nurses, attendants, assistants, consultants and the like at the Milwaukee VAMC and at other Veteran's Administration Medical

Centers who examined, diagnosed and provided care and treatment to her in connection with, among other things, injuries to her ankle and related pain management.

14. In or about the year 2008 Plaintiff Lorie Hinkel had a spinal cord stimulator surgically implanted in her body at the Omaha Veterans Administration Medical Center.

15. In or about the year 2012 the spinal cord stimulator that had been surgically implanted began to malfunction so that it no longer provided pain relief to Plaintiff.

16. In late 2012 and early 2013 Plaintiff sought treatment from the Milwaukee VAMC and from the defendant Alastair Hoyt who worked at Milwaukee VAMC with regard to the malfunctioning spinal cord stimulator.

17. The Defendant United States, through its agents and employees at the Milwaukee VAMC and the Defendant Alastair Hoyt advised Plaintiff to undergo surgery to remove and replace her spinal cord stimulator.

18. Prior to the surgery to remove and replace Plaintiff's spinal cord stimulator, Plaintiff was advised by Defendants that Defendant Hoyt would perform the surgery on her. Plaintiff was further advised that Defendant Hoyt was the Chief of Neurosurgery at Milwaukee VAMC.

19. Based on the aforesaid representations, Plaintiff agreed to undergo surgery by Defendants to remove and replace her spinal cord stimulator.

20. The surgery to remove and replace Plaintiff's spinal cord stimulator was performed at the Milwaukee VAMC on or about May 30, 2013.

21. Upon information and belief, the May 30, 2013 surgery to remove and replace Plaintiff's spinal cord stimulator was performed by an agent and employee of the Milwaukee VAMC named Dr. Amos Ladaceur.

22. Upon information and belief, Dr. Ladaceur was a medical Resident working at the Milwaukee VAMC at the time of the May 30, 2013 surgery.

23. Upon information and belief, Dr. Ladaceur was an employee of the Milwaukee VAMC at the time of the May 30, 2013 surgery.

24. Upon information and belief, Dr. Ladaceur was an agent of the Milwaukee VAMC at the time of the May 30, 2013 surgery.

25. Upon information and belief, Dr. Ladaceur was an employee of the Defendant United States at the time of the May 30, 2013 surgery.

26. Upon information and belief, Dr. Ladaceur was an agent of the Defendant United States at the time of the May 30, 2013 surgery.

27. Upon information and belief Defendant Hoyt participated in the May 30, 2013, surgery to remove and replace Plaintiff's spinal cord stimulator.

28. Either during the May 30, 2013 surgery or immediately thereafter while Plaintiff was in the Post-Anesthesia Care Unit (PACU), Plaintiff suffered neurologic injury and became paraplegic.

29. Following the May 30, 2013 surgery Plaintiff remained under the care of the Defendants, their agents, servants and employees. Her condition did not improve but rather deteriorated after the May 30, 2013 surgery, with the development of additional neurologic and motor deficits.

30. On or about June 3, 2013, the Defendants performed additional surgery on the Plaintiff to remove the spinal cord stimulator device that they had implanted during the May 30, 2013 surgery.

31. After the June 3, 2013 surgery, Plaintiff remained paraplegic with bowel and bladder dysfunction. Subsequent testing performed by the Defendants indicated that Plaintiff's spinal cord had suffered an infarct in the areas where the surgeries had been performed by the Defendants.

32. That at all times hereinafter mentioned, Defendants, in rendering medical and surgical care and treatment to the plaintiff Lorie Jean Hinkel owed her the duty to use a reasonable degree of learning and skill, the duty to use reasonable care and diligence in the exercising of that learning and skill, the duty to employ approved methods in general use in the medical field, and the duty to use their best judgment in the care and treatment of the Plaintiff.

33. That Defendants, their agents, servants, staff members, employees and/or independent contractors were negligent and committed malpractice in their care and treatment of the plaintiff Lorie Jean Hinkel, in failing to properly treat, care for, observe, administer to, diagnose, test, and otherwise treat the plaintiff herein for the condition and complaints with which she presented; in failing, neglecting and omitting to timely render the proper, necessary and required course of treatment to the plaintiff for the conditions and complaints with which she presented; in failing to timely and appropriately manage plaintiff's condition; in failing to properly perform surgery upon the plaintiff; in failing to properly perform spinal surgery; in causing injury to the Plaintiff's spinal cord during and after the surgery performed on May 30, 2013; in permitting an unqualified and untrained physician to operate upon the plaintiff for the removal and repair of the spinal cord stimulator; in failing to properly supervise the actions of their agents and employees; in failing to protect and preserve the integrity of the spinal cord and its blood supply during the May 30, 2013, surgery; in causing and permitting a spinal cord infarct to occur; failing to properly examine Plaintiff after the May 30 surgery; failing to properly assess

Plaintiff's condition in the post-operative period following the May 30 surgery; failing to timely and properly perform examinations and tests to determine the nature and cause of Plaintiff's paralysis and neurologic deficits after the May 30 surgery; failing to timely and properly diagnose Plaintiff's condition after the May 30 surgery; failing to timely order and perform diagnostic tests after the May 30 surgery, including x-rays, CT scans, MRIs, sonograms and catheterizations; negligently delayed in the proper diagnosis and treatment of plaintiff's condition; negligently delayed in the proper diagnosis and treatment of a spinal cord infarct; negligently delayed in the performance of additional surgery after May 30 to investigate the nature of Plaintiff's condition and to remove the spinal cord stimulator that had been placed on May 30; in failing to recognize signs of spinal infarct including paraplegia and neurological deficits; improperly interpreting diagnostic tests that were performed; failing to advise plaintiff's treating and attending physicians of the Plaintiff's signs and symptoms and of the results of examinations and testing that was performed; failing to properly assess plaintiff's neurologic status post-operatively; in deviating and departing from the good and accepted standards of medical care and treatment; failing to refer plaintiff to specialists and to engage the services of consultants post-operatively; as a result of defendants' failure to appropriately manage the plaintiff's condition, the defendants, their agents, servants, staff members, employees and/or independent contractors, did cause, permit and/or allow the plaintiff to suffer an injury to her spinal cord and permitted her condition to worsen; in depriving plaintiff of the opportunity to be timely treated and cured of her condition; that as a consequence of the foregoing, the plaintiff was caused to suffer serious and permanent injuries and complications; pain, weakness, fatigue, and depression; in failing to safeguard and protect the health and life of plaintiff; in violating the applicable laws, rules, statutes and regulations; in deviating and departing from the good and

accepted standards of medical care and practice; and they were otherwise careless and negligent and failed to act in a reasonable and acceptable medical manner in their treatment of plaintiff. Plaintiff also relies on the doctrine of Res Ipsa Loquitur but hereby reserve her right to prove the defendants were negligent as more specifically set forth herein.

34. That the said occurrence and resulting injuries and disabilities to the plaintiff were caused wholly and solely by reason of the carelessness, negligence and malpractice of the defendants, each of them, their agents, servants, staff members, employees and/or independent contractors as set forth above and with no fault or lack of care on the part of the plaintiff herein contributing thereto.

35. Defendants United States was negligent in the ownership, operation, management, maintenance, supervision and control of the aforesaid Milwaukee VAMC and failed to properly and appropriately provide the necessary and required medical care and treatment to the plaintiff for the conditions with which she presented, to wit, complaints with regard to the spinal cord stimulator in her back.

36. The Defendants herein, and each of them, by and through their ostensible agents, actual agents, and employees, negligently failed to possess and to exercise that degree of knowledge and skill ordinarily possessed and exercised by other hospitals, physicians, surgeons, anesthesiologists, nurse anesthetists, nurses, attendants, assistants, consultants, and contractors in the same or similar locality.

37. Defendants United States and Alastair Hoyt were negligent in the supervision of their agents, servants and employees working at the Milwaukee VAMC who treated plaintiff.

38. As a proximate result of the foregoing, Plaintiff Lorie Jean Hinkel has suffered serious and permanent personal injuries and complications including but not limited to a spinal

cord injury; neurologic deficits below the waist, including neurologic injury, motor weakness, incontinence of the bladder and bowel; paralysis and incontinence, numbness below the waist, sexual dysfunction, motor and sensory dysfunction, inability to properly walk, impaired use of her legs, necessity for aids to ambulation, and severe shock to her nervous system, that she has been, and will continue to be compelled to suffer extreme pain and suffering for the remainder of her life; that she has been and will continue into the future to be incapacitated from attending to her usual and customary activities of daily living and recreational activities; that she requires and will continue to require for the remainder of her life medical care, intervention and treatment for these permanent injuries and complications; has incurred and will incur in the future special damages for the costs of medical care, she has suffered and continues to suffer from mental anguish, pain, suffering, loss of enjoyment of life, depression, anxiety, physical pain, anxiety, humiliation, and emotional distress as a result thereof, as well as a loss of enjoyment of life.

39. As a further proximate result of the negligence of the agents and employees of Defendants, their agents, servants and employees, in their negligent care and treatment of plaintiff Lorie Jean Hinkel, as described hereinabove, plaintiff has sustained economic damages by incurring expenses for medical services, both past and for the foreseeable future, including, but not limited to, rehabilitation services, in-home nursing care, home modifications, medical care and treatment outside the VA system, medications, and other similar medical services.

40. As a further proximate result of the negligence of the agents and employees of Defendants, their agents, servants and employees in their negligent care and treatment of plaintiff Lorie Jean Hinkel, as described hereinabove, plaintiff has sustained economic damages by the loss of past and future services and loss of past and future earning capacity. As a direct and proximate result of the negligence of Defendants, Plaintiff is personally responsible for all of the

costs of medical, therapeutic and associated expenses with respect to the ongoing care and treatment outside of the control and auspices of the VA Health Care System.

41. That by reason of the foregoing, plaintiff Lorie Jean Hinkel has been damaged in a sum not to exceed $100,000,000.00.

## SECOND CAUSE OF ACTION
## FOR FAILURE TO PROVIDE PROPER INFORMED CONSENT

42. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs of this Complaint, inclusive, together with the same force and effect as if the same were set forth more fully at length herein.

43. That the defendants, each of them, their agents, servants, staff members, employees and/or independent contractors, failed to disclose all of the facts that a reasonable physician and/or medical facility, under similar circumstances, would explain or disclose to a patient including a failure to disclose the risks and benefits of the treatment and procedures performed, the alternatives thereto and the risks and benefits relating to the alternatives and they otherwise failed to properly, adequately and fully inform the plaintiff.

44. That a reasonably prudent person in the plaintiff's position would not have undergone the treatment if she had been fully informed and that the lack of informed consent is a proximate cause of the injuries suffered herein for which recovery is sought.

45. That the treatment rendered by the defendants herein was not emergency treatment, an emergency procedure or emergency surgery.

46. As a proximate result of the foregoing, Plaintiff Lorie Jean Hinkel has suffered serious and permanent personal injuries and complications including but not limited to a spinal cord injury; neurologic deficits below the waist, including neurologic injury, motor weakness,

incontinence of the bladder and bowel; paralysis and incontinence, numbness below the waist, sexual dysfunction, motor and sensory dysfunction, inability to properly walk, impaired use of her legs, necessity for aids to ambulation, and severe shock to her nervous system, that she has been, and will continue to be compelled to suffer extreme pain and suffering for the remainder of her life; that she has been and will continue into the future to be incapacitated from attending to her usual and customary activities of daily living and recreational activities; that she requires and will continue to require for the remainder of her life medical care, intervention and treatment for these permanent injuries and complications; has incurred and will incur in the future special damages for the costs of medical care, she has suffered and continues to suffer from mental anguish, pain, suffering, loss of enjoyment of life, depression, anxiety, physical pain, anxiety, humiliation, and emotional distress as a result thereof, as well as a loss of enjoyment of life.

47. As a further proximate result of the negligence of the agents and employees of Defendants, their agents, servants and employees, in their negligent care and treatment of plaintiff Lorie Jean Hinkel, as described hereinabove, plaintiff has sustained economic damages by incurring expenses for medical services, both past and for the foreseeable future, including, but not limited to, rehabilitation services, in-home nursing care, home modifications, medical care and treatment outside the VA system, medications, and other similar medical services.

48. As a further proximate result of the negligence of the agents and employees of Defendants, their agents, servants and employees in their negligent care and treatment of plaintiff Lorie Jean Hinkel, as described hereinabove, plaintiff has sustained economic damages by the loss of past and future services and loss of past and future earning capacity. As a direct and proximate result of the negligence of Defendants, Plaintiff is personally responsible for all of the

costs of medical, therapeutic and associated expenses with respect to the ongoing care and treatment outside of the control and auspices of the VA Health Care System.

49. That by reason of the foregoing, plaintiff Lorie Jean Hinkel has been damaged in a sum not to exceed $100,000,000.00.

WHEREFORE, plaintiff demands judgment against the defendants, each of them, jointly and severally, together with the interest, costs and disbursements of this action as follows:

**On the first cause of action**, judgment against Defendants UNITED STATES OF AMERICA and ALASTAIR HOYT in the amount of $100,000,000.00; and

**On the second cause of action**, judgment against Defendant UNITED STATES OF AMERICA and ALASTAIR HOYT in the amount of $100,000,000.00

DATED: Milwaukee, WI
May 3, 2016

**MURPHY & PRACHTHAUSER**
*Attorneys for Plaintiff*

By: */s/* Thadd J. Llaurado
One Plaza East Building
330 E. Kilbourne Avenue, Suite 1200
Milwaukee, WI 53202
Tel.: (414) 271-1011
Email: tllaurado@murphyprachthauser.com

**RHEINGOLD, VALET, RHEINGOLD, MCCARTNEY & GIUFFRA LLP**
*Attorneys for Plaintiff*

By: /s/ Thomas P. Valet
113 East 37th Street
New York, NY 10016
Tel.: (212) 684-1880
Email: tvalet@rheingoldlaw.com